1 | RANDOLPH E. DAAR (SBN 88195)
ATTORNEY AT LAW
2 | 3330 Geary Blvd., 3rd Floor E.
San Francisco, CA 94118
3 | Tel:    (415) 986-5591
Fax:    (415) 421-1331
4 | randolphdaar@yahoo.com
5 |
Attorney for Plaintiff
6 | ADORTHUS CHERRY

PIER 5 LAW OFFICES
San Francisco, CA

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

ADORTHUS CHERRY,

       Plaintiff,

       v.

Modesto Policed Sergeant JAMES
"DERRICK" TYLER, Lieutenant TERRY
SEESE, the CITY OF MODESTO,; and
JOHN/JANE DOEs #s 1 through 10,
inclusive,

       Defendants.

Case No. 1:18-cv-01268-LJO-EPG

**AMENDED COMPLAINT FOR
VIOLATIONS OF FEDERAL AND STATE
CIVIL RIGHTS AND OTHER WRONGS[1]**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1.     Plaintiff Adorthus Cherry, a former professional body builder and a respected member of the Modesto community, has long found himself harassed by members of the Modesto Police Department, who have sought to retaliate against him for his criticism of overzealous and corrupt police practices.  Bulletins about him posted or circulated by the Modesto Police read like a blueprint on how to set up Mr. Cherry for false arrest, by misconstruing his First Amendment protected criticism as threatening, even while admitting that "his statements generally have not met the elements of terrorists [sic] threats…"

---

[1] In this amended pleading, plaintiff re-pleads his state causes of action (Nos. VI through X), mindful of the Court's dismissal of these claims without prejudice (Order of March 6, 2019, Dkt. #17), only to preserve any appeal rights within the rule of *Lacey v. Maricopa County*, 693 F.3d 896, 927-928 (9th Cir. 2012).

AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS      *Cherry v. Tyler, et al.*

1      2.      On or about November 4, 2016, Modesto Police Sergeant Derrick Tyler and

2   Lieutenant Terry Seese seized on what they thought was a ripe opportunity to frame Mr. Cherry

3   for crimes he did not commit, i.e. allegedly threatening Sgt. Tyler at a football game attended by

4   Cherry and Tyler.  However, Mr. Cherry did no such thing, and Sgt. Tyler's subsequent actions

5   and statements belied his allegations.

6      3.      After Mr. Cherry and Sgt. Tyler parted ways at the game, Tyler exchanged

7   telephone text messages with his Lieutenant, Seese, revealing their plan to railroad Mr. Cherry,

8   writing, in part:

9      Sgt. Tyler:     Nothing like Cherries [sic] dad threatening me at a football game.

10      Lt. Seese:     Arrest him

      Sgt. Tyler:     That's the plan.

11      4.      The next day, Sgt. Tyler and Lt. Seese made a false report to the Oakdale Police

12   (the city where the football game took place) in order to effectuate the false arrest of Cherry.

13   The Oakdale Police obliged, as did the Stanislaus County District Attorney, who dutifully

14   prosecuted Mr. Cherry for allegedly threatening Tyler.  The case gradually unraveled, however,

15   until the District Attorney completely dismissed it on the day of trial.  But this was not before

16   Mr. Cherry suffered significant emotional and economic harm.

17      5.      Mr. Cherry hereby sues Sgt. Tyler and Lt. Seese for their outrageous abuse of

18   power in attempting to frame him.

19               **JURISDICTION AND VENUE**

20      6.      This Court has jurisdiction under 42 U.S.C. §§ 1983 et seq., including § 1985, and

21   28 U.S.C. §§ 1331, 1343, and 1367.

22      7.      Venue in this Court is proper as the acts/omissions complained of occurred within

23   Stanislaus County, California, a county served by the federal Eastern District of California

24   (Local Rule 120(d)), and because plaintiff resided at all relevant times in Stanislaus County.

25                     **PARTIES**

26      8.      Plaintiff ADORTHUS CHERRY is a natural person of majority age and United

27   States citizen who resided at all relevant times in Stanislaus County, California.

28

**PIER 5 LAW OFFICES**
San Francisco, CA

2

PIER 5 LAW OFFICES
San Francisco, CA

9.      Defendant JAMES DERRICK TYLER (aka Derrick Tyler) is a natural person of majority age and United States citizen who at all relevant times worked as a sworn sergeant for the Modesto Police Department, City of Modesto, Stanislaus County, California. Defendant Tyler committed the wrongs herein alleged while acting in the capacity of both a private individual, and in the course and scope of his official duties as a sworn police officer, under color of California law, including based on his joint action and state action in concert with Defendant Seese and/or other officials, as more fully set forth below.

10.     Defendant TERRY SEESE is a natural person of majority age and United States citizen who at all relevant times worked as a sworn lieutenant for the Modesto Police Department, City of Modesto, Stanislaus County, California.  At all times relevant hereto, Defendant Seese was acting in the course and scope of his official duties as a sworn police officer, under color of California law.  Alternatively, Seese is liable in his private and personal capacity to Plaintiff for the California common law torts of malicious prosecution and abuse of process, as pleaded herein.

11.     Defendant CITY OF MODESTO, California is a municipality incorporated under the laws of the State of California which is vicariously liable for the tortious and negligent acts and omissions of its employees, including Modesto Police Sergeant Derrick Tyler and Lieutenant Terry Seese, which were committed in the course and scope of their employment, and for which they are liable under California law, as well as for any compensatory judgment(s) issued against them, by operation of Cal. Gov't Code § 825(a), and any exemplary (punitive) damages award by operation of Gov't Code § 825(b).

12.     Defendants JOHN/JANE DOEs #s 1 through 10, inclusive, are other natural persons or municipal entities who bear liability for the wrongs committed against Plaintiff Cherry, whose names are presently unknown and who therefore are sued herein under these fictitious names, including, Modesto Police officers and/or Oakdale police officers.  Plaintiff will seek to substitute their true names for these fictitious names if and when their true names, capacities, and roles are determined.

AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS            *Cherry v. Tyler, et al.*

**ALLEGATIONS OF FACT COMMON TO ALL CAUSES OF ACTION**

**Background & History:**

13.     Plaintiff Adorthus Cherry, age 47, was a 15-year resident of Modesto when the events in this case occurred.  He lived there with his wife of three years and their children, ages 12, 17, and 18.  Mr. Cherry is a former professional body builder who competed for years at the highest level.  He was featured in magazines and in numerous competitions.  Since retiring from professional body building, Mr. Cherry has worked as an athletic trainer and as a doorman.  He is well-known and liked in the community of Modesto.  In the gym where he used to work out and train on an almost daily basis, he had numerous friends, including in law enforcement.

14.     Defendant Sgt. Derrick Taylor is a veteran of the Modesto Police Force.  He was at the time of these events the freshman running back coach for Modesto Central Catholic High School football team.  Tyler and Cherry were acquainted, including because Tyler once attempted to recruit Cherry's eldest son, who was a star at Oakdale High School, to play for Central Catholic.

15.     On or about June 9, 2016, several Modesto police officers confronted and detained Mr. Cherry on the street in front of a Modesto Police Department-owned building.  Mr. Cherry filmed his encounter with police, within his rights, upon which police unlawfully detained him, falsely accusing him of causing a disturbance.

16.     Eventually, as the officers started to leave the scene, Sgt. Tyler emerged from the building, approached Cherry, and began to question him.

17.     The officers who had departed returned and informed Cherry that since he was on informal probation at the time for misdemeanor marijuana possession, he must submit to an immediate search.  While the officers detained Cherry outside the police building, they ordered a probation search of his home.  During the probation search, police discovered a small indoor marijuana grow.  Modesto Police then arrested Cherry and charged him with cultivation and possession for sale of marijuana.  However, these charges were dismissed after Cherry presented evidence that he and his wife, both lawful medical marijuana patients, were authorized to possess and cultivate all the marijuana that was seized from their home.

18.     Sgt. Tyler did not participate in the arrest, search, or investigation of Mr. Cherry, or the afore-described incident.

19.     Also on or about June 9, 2015, the Modesto Police Department posted and/or distributed the first of at least three "Criminal Information Bulletins" alerting officers to a baseless and fabricated threat posed by Mr. Cherry.  The bulletins evinced major bias and functioned as a blueprint for how to frame Cherry.  They stated, in pertinent part:

> Cherry often videos officers with his telephone and /or from cameras outside his home. During his contacts with officers he attempts to bait officers with his demeanor into unwarranted uses of force or inappropriate arrests.  He often posts videos or photographs of interactions with officers on the internet.  Mr. Cherry is the subject of several restraining orders and appears to enjoy controversy and conflict with others including his family.  His statements generally have not met the elements of terrorists threats, though his demeanor can be threatening.  The Cherry's have several civil cases in litigation as well.

(Exhibit A, hereto.)

20.     Approximately a month later, Mr. Cherry posted the following criticism of Sgt. Tyler to his (Cherry's) Facebook page:

> CC [Central Catholic High school] employees a racist BLACK POLICE OFICER as a coach! Horrible!!!! See you in 10 wks!

(Exhibit B hereto.)

21.     Sgt. Taylor later testified that he interpreted "10 wks" to refer to the approaching, rival varsity football game in Oakdale between Oakdale High School and Modesto Central Catholic High School.  Although there was nothing threatening about this First Amendment post, Sgt. Tyler testified later that he considered it threatening.  According to Tyler, he documented the post to his patrol captain, but there is no evidence he took any other action.

**Underlying Incident:**

22.     On November 4, 2016, Mr. Cherry and Sgt. Tyler both attended the rival football game—Cherry because his son was playing for Oakdale, and Tyler as a freshman running back coach for Central Catholic (as a guest at the time, but not coaching in the varsity game).  Tyler was off duty and in civilian clothes.

23.     Around the end of half time, Sgt. Tyler was returning from the restroom at the

PIER 5 LAW OFFICES
San Francisco, CA

north side of the football field and walking back toward the football field, he saw Mr. Cherry walking in the opposite direction along with three or four other people. Sgt. Tyler initiated a conversation, saying "What's up" to Cherry. The men then had a verbal exchange in which Cherry accused Tyler of setting him up in the June 9, 2016 bust, which Tyler denied. A coach happening by asked if there was a problem, to which Tyler answered no, and that he had arrested Cherry once before and could do so anytime he wanted.

24.     Sgt. Tyler initiated the exchange to bait Mr. Cherry. Tyler did not break off the exchange when he could have, but continued to engage Cherry. At no point did Cherry verbally or physically threaten Tyler. Throughout their exchange, the men stood at least several yards apart and were separated by a fence. Tyler could have kept walking, but he stayed to verbally joust with Cherry even after he, Tyler, walked through a gap in the fence onto the field. Cherry did not follow Tyler onto the field.

25.     Tyler testified that he did not take anything Cherry said as a threat until, he claims, Cherry said "I'm going to get you," upon which Tyler asked him, "Are you threatening me?" According to Tyler, Cherry "cussed" and/or said something unintelligible in response. Tyler then continued onto the field, finally walking away. Tyler testified that he "didn't pay attention to [Cherry] after that."

26.     After initiating contact with Cherry, Tyler did not take any subsequent precautionary or emergency measures, e.g. by promptly leaving the game or summoning Oakdale police officers who were working security at the game. He merely said something in passing to Oakdale coaches about 'getting Cherry.' according to Tyler's testimony.

27.     Sgt. Tyler then further conspired with his Modesto Police Lieutenant Terry Seese, initiating the following telephone text message exchange with Seese:

| | |
|---|---|
| Sgt. Tyler: | Nothing like Cherries [sic] dad threatening me at a football game. |
| Lt. Seese: | Arrest him |
| Sgt. Tyler: | That's the plan. |
| Lt. Seese: | I was joking. |
| Sgt. Tyler: | He knows what I do. And he is complaining about his last arrest. He thinks I set him up. I won't do it myself. |

PIER 5 LAW OFFICES
San Francisco, CA

6

1   Lt. Seese:        He's an idiot / Welcome to the corral.

2   Sgt. Tyler:        … Yes he is an idiot …

3   (Exhibit C, hereto)

4   28.    A year later, at Cherry's preliminary hearing, Tyler voluntarily interjected during

5   proceedings from the gallery, not from the witness stand, that he was not requesting a stay away

6   order that would bar Cherry from going to football games they both attended.  Cherry, in

7   contrast, moved outside of Modesto City limits based on his fear of and sustained harassment by

8   Modesto Police.

9   29.    Defendants Tyler and Seese did not cause Cherry's arrest at the game at the time

10   of the supposed threat, or effectuate a citizen's arrest of him by the hand of the Oakdale Police.

11   Instead, in a bootless effort to shield themselves from liability and launder their actions through

12   the Oakdale Police Department, they conspired to suborn Mr. Cherry's false arrest and malicious

13   prosecution by the Oakdale Police Department and the Stanislaus County District Attorney's

14   Office.

15   30.    On or about November 5, 2016, Lt. Seese contacted his colleagues in the Oakdale

16   Police Department and arranged for them to contact Sgt. Tyler.  Oakdale Police Officer Joseph

17   Carrillo obliged.  On or about November 5, 2016, Tyler gave a false account of events to

18   Carrillo, spuriously alleging that Mr. Cherry had threatened him the day before and that Tyler

19   had actually felt threatened.  According to Oakdale Police Officer Carrillo, "Tyler stated that he

20   wanted Cherry arrested for the threats."

21   31.    Modesto Police then obligingly arrested Mr. Cherry at his home on November 5,

22   2016 without incident.  Oakdale Police also requested and obtained a bail enhancement.  During

23   the concurrent search of Cherry's home, Modesto Police officers improperly failed to turn on, or

24   turned off, their PDR (lapel) cameras.

25   **Dismissal of Criminal Charges:**

26   32.    The Stanislaus District Attorney's office charged Mr. Cherry under Penal Code

27   § 69 (threatening an officer with intent to interfere), § 1361.1 (threatening a witness with intent

28   to dissuade), and § 140(a) (threat of force or violence because of prior assistance in prosecution).

PIER 5 LAW OFFICES
San Francisco, CA

7

At the preliminary hearing on October 23, 2017, the Court dismissed the Penal Code § 69 charge (because Tyler was off duty), and the § 136.1 charge (because Tyler was not a witness to any separate alleged crime), but held Cherry to answer on a newly-amended complaint alleging a violation of Penal Code § 422 (criminal threats), as well as the original § 140(a) charge.

33.   A few days before the scheduled jury trial, the Assistant District Attorney assigned to the case offered Mr. Cherry a plea to an infraction under Penal Code § 415, with credit for time served and dismissal of all remaining charges.  Mr. Cherry declined the offer.  On the day of trial, the District Attorney dismissed the whole case.

34.   Therefore, the criminal proceedings against Mr. Cherry did not result in conviction, but rather, terminated wholly in Cherry's favor.

35.   In the course of his defense against these false charges, Mr. Cherry incurred, and hereby seeks to recover, tens of thousands of dollars in legal fees as well as costs of litigation.

36.   As a result of Defendants Tyler and Seese's conspiracy to set Mr. Cherry up and suborn his false arrest and malicious prosecution, Mr. Cherry also suffered and continues to suffer emotional damages, including stress, anxiety, fear, humiliation, and damage to his reputation as s result of the ordeal.

## PETITION TO COURT FOR ORDER RELIEVING PLAINTIFF FROM CAL. GOV'T CODE § 945.4 PURSUANT TO § 946.6.

37.   Plaintiff sues Defendant Tyler in both Tyler's personal and official capacities, and Defendant Seese only in his official capacity.  Plaintiff's claims against Tyler in his personal capacity are timely filed without the submission of any California tort claim against the officer or his municipal employer.

38.   The incident giving rise to plaintiff's case against Sgt. Tyler and Lt. Seese arose on or about November 4, 2016.  However, as discussed further below, plaintiff's claims against these officers did not accrue until on or about March 1, 2018, when plaintiff learned for the first time of material evidence, to wit, a telephone text message exchange, showing that the officers conspired to suborn his false arrest and are therefore liable in their official capacities and not immune.

PIER 5 LAW OFFICES
San Francisco, CA

8

39.     Cal. Gov't Code § 911.2 requires a claimant to present a tort claim against public officials "not later than six months after the accrual of the cause of action," in order to preserve the right to sue for claims based on California law.  Gov't Code § 911.2.  However, the accrual date of a cause of action under California law is tolled by the delayed discovery of the cause of action.  *E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308.

40.     In addition, Gov't Code §§ 911.4, 911.6, and 946.6 provide a means by which a claimant may apply for consideration of a late claim and seek relief from the ordinary six month rule.

41.     In this case, plaintiff submitted his tort claim against Sgt. Tyler and Lt. Seese to the City of Modesto ("City") on or about June 25, 2018, less than four months after learning of their sinister text message exchange, along with an application for late consideration in accordance with Gov't Code § 911.6(b)(1).

42.     Gov't Code § 911.6(b)(1) provides in pertinent part:

(a) The board shall grant or deny the application within 45 days after it is presented to the board. The claimant and the board may extend the period within which the board is required to act on the application by written agreement made before the expiration of the period.

(b) The board shall grant the application where one or more of the following is applicable:

(1) The failure to present the claim was through mistake, inadvertence, surprise or excusable neglect and the public entity was not prejudiced in its defense of the claim by the failure to present the claim within the time specified in Section 911.2.

43.     The City nevertheless rejected plaintiff's tort claims on August 10, 2018.  Gov't Code § 946.6 provides the mechanism for relief from the City's denial.  It states, in pertinent part:

(a) If an application for leave to present a claim is denied or deemed to be denied pursuant to Section 911.6, a petition may be made to the court for an order relieving the petitioner from Section 945.4. The proper court for filing the petition is a superior court that would be a proper court for the trial of an action on the cause of action to which the claim relates. If the petition is filed in a court which is not a proper court for the determination of the matter, the court, on motion of any party, shall transfer the proceeding to a proper

PIER 5 LAW OFFICES
San Francisco, CA

PIER 5 LAW OFFICES
San Francisco, CA

court.…

(b) The petition shall show each of the following:

(1) That application was made to the board under Section 911.4 and was denied or deemed denied.

(2) The reason for failure to present the claim within the time limit specified in Section 911.2.

(3) The information required by Section 910.

(c) The court shall relieve the petitioner from the requirements of Section 945.4 if the court finds that the application to the board under Section 911.4 was made within a reasonable time not to exceed that specified in subdivision (b) of Section 911.4 and was denied or deemed denied pursuant to Section 911.6 and that one or more of the following is applicable:

(1) The failure to present the claim was through mistake, inadvertence, surprise, or excusable neglect unless the public entity establishes that it would be prejudiced in the defense of the claim if the court relieves the petitioner from the requirements of Section 945.4.

44.     In this case, Plaintiff Cherry's claim hinges on evidence which was not known to, and could not have been known to, claimant until on or about March 1, 2018, namely a telephone text message exchange between Sgt. Tyler and Lt. Seese, which revealed that they conspired to have Mr. Cherry falsely arrested and charged.  In it, Sgt. Tyler reported (falsely) that Mr. Cherry threatened him.  Lt. Seese then directed Sgt. Tyler to arrest Mr. Cherry, and Sgt. Tyler responded, "That's the plan."  (Exhibit C, hereto.)

45.     When read in conjunction with the Modesto Police bulletins (Exhibit A, hereto) targeting Mr. Cherry and observing that "[h]is statements generally have not met the elements of terrorists [sic] threats," the officers' text exchange revealed a malicious plot to gin up the missing ingredient, namely the false allegation that Mr. Cherry had made a terrorist threat.

46.     These officers then abused their power and authority to suborn Mr. Cherry's bogus arrest by falsely reporting the matter to the Oakdale Police Department and requesting that they arrest Mr. Cherry, per "plan."

47.     The delayed discovery of this text message exchange, which was first presented to Mr. Cherry by prosecutors in discovery in his related criminal case, more than satisfies the terms

of Gov't Code § 911.6(b)(1) in that it both constitutes "surprise" and furnishes "excusable neglect" for the delayed filing of this claim.

48.     Prior to seeing this evidence, Mr. Cherry and his attorneys could not reasonably have known or surmised that these sworn Modesto police officers maliciously conspired to have Mr. Cherry arrested, knowing such arrest to be unlawful, in a manner that strips them of immunity under California law (including Penal Code § 836.5(b)), and therefore makes them substantially and proximately liable for Mr. Cherry's false arrest.

49.     Until this text message exchange was produced to Mr. Cherry in criminal discovery, it resided singularly within the possession, custody, and control of the Modesto Police Department and the officers responsible, such that Mr. Cherry had no prior access to or means of ascertaining this information.

50.     Pursuant to California's delayed discovery rule, Plaintiff' Cherry's claim did not even accrue until March 1, 2018, the date on which he learned of the sinister and conspiratorial text message exchange between the officers.  Therefore, according to the express terms of Gov't Code § 911.2, his deadline to submit a tort claim was "six months after [this] accrual" date.  He in fact timely submitted his claim within *four* months of the March 1, 2018 accrual date.

51.     In addition, Mr. Cherry submitted a Gov't Code § 911.4 application for late consideration, which satisfies the requirements of §§ 911.6 and 946.6 by demonstrating "surprise" and "excusable neglect."

52.     For the foregoing reasons, Mr. Cherry's tort claim should be deemed timely submitted under § 911.2.  Alternatively, the Court should grant him relief from the time constraints of § 911.2 in accordance with § 946.6(c).  Such is consistent with the California's legislative purpose in enacting the late claim filing provisions of Gov't Code §§ 911.6 and 946.6, namely "to alleviate the harshness of strict compliance with the claims presentation period for … persons excusably neglectful."  *Segal v. Southern California Rapid Transit Dist.* (1970), 12 Cal.App.3d 509, 512, citing *Viles v. State of California* (1967) 66 Cal.2d 24.

53.     If the Court declines to order relief, the question whether California's delayed discovery rule applies and tolled the accrual of plaintiff's causes of action against defendants in

PIER 5 LAW OFFICES
San Francisco, CA

their official capacities is a question of fact which must be submitted to the jury.  See, e.g., California Civil Jury Instruction No. 455.  "[U]nder the delayed discovery rule, a cause of action accrues and the statute of limitations begins to run when the plaintiff has reason to suspect an injury and some wrongful cause…"  E-Fab, Inc., 153 Cal.App.4th at 1319.  *See also,* e.g., *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1109 ("The discovery rule provides that the accrual date of a cause of action  is delayed until the plaintiff is aware of her injury and its negligent cause.")

## CAUSES OF ACTION UNDER FEDERAL LAW

### ONE:  42 U.S.C. § 1983 (Fourth Amendment)
### Unreasonable Search, Seizure, Arrest, Detention, and/or Imprisonment
### Against: Defendants Tyler and Seese, as individuals

54.     Plaintiff hereby re-alleges and incorporates the foregoing paragraphs as if fully set forth again here.

55.     During his arrest and detention, Plaintiff had a clearly established right to be free from unreasonable search and seizure, including unreasonable arrest, detention, and imprisonment, by government officials, as secured to him by the Fourth Amendment to the United States Constitution.

56.     Beginning on or about November 4, 2016, Defendants Tyler and Seese, and each of them, suborned the false arrest and imprisonment of Plaintiff by intentionally and knowingly conspiring to, and actually providing false and misleading information to Oakdale Police officer(s); withholding and concealing exculpatory information from officer(s); and by requesting that officer(s) arrest Plaintiff—including without limitation by informing officer(s) that Plaintiff criminally threatened Defendant Tyler, and that Defendant Tyler was put in actual fear for his safety as a result, knowing such information to be false.

57.     As a direct, foreseeable, and proximate result, members of the Oakdale Police Department arrested and detained Plaintiff on or about November 6, 2016, assisted by members of the Modesto Police Department.  But for these Defendants' actions in conspiring to and actually providing false and misleading information to Oakdale police, Plaintiff would not have been arrested and detained on this date.

PIER 5 LAW OFFICES
San Francisco, CA

PIER 5 LAW OFFICES
San Francisco, CA

58.   Plaintiff's arrest on November 6, 2016 was without warrant, probable cause, reasonable suspicion, Plaintiff's consent, exigency, or other justification.

59.   As sworn and experienced police officers, these Defendants actually knew and reasonably should have known that police lacked warrant, probable cause, reasonable suspicion, Plaintiff's, consent, exigency, or other justification arrest and detention on November 6, 2016.

60.   In committing the afore-described acts and omissions, these Defendants, and each of them, acted in the course and scope of their employment as sworn Modesto Police officers and under color of California state law.  Alternatively, Defendants' conduct meets the requirements for "state action" and "joint action" under Section 1983 jurisprudence, to wit:

61.   Although Defendant Tyler was off duty at the time he alleged Plaintiff Cherry threatened him (at the football game on November 4, 2016), Defendant Tyler was on duty at other key times, such as when he supplied false and misleading information to Oakdale police and when he failed to intervene to prevent Plaintiff's false arrest.  Furthermore, as a police officer himself, Defendant Tyler enjoys a plethora of rights and privileges throughout the State of California, regardless whether he is on duty, including a greater degree of practical access to and coordination with fellow officers.  Regardless whether he was on or off duty during times relevant to this case, he acted in concert with Defendant Seese and other officers to virtually the same degree and effect as if he were on duty at all relevant times.  This is sufficient to establish that he engaged in "state action" and "under color" of law for purposes of liability under Section 1983.  "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment." *Collins v. Womancare*, 878 F.2d 1145, 1148 (9th Cir. 1989), citing *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 928, 935 (1982). ("state action" under the Fourteenth Amendment also satisfies section 1983's under color of state law requirement).

62.   In addition, Defendant Tyler actually conspired with his lieutenant, Defendant Seese, who was on duty at all relevant times, sufficient to establish joint action for purposes of Defendant Tyler's liability under Section 1983.  "To act 'under color' of law does not require that the accused be an officer of the State." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970),

PIER 5 LAW OFFICES
San Francisco, CA

1   quoting *United States v. Price*, 383 U.S. 787, 794 (1966).  "One way to establish joint action is to

2   demonstrate a conspiracy" (as also pleaded here).  *Collins*, 878 F.2d at 1154, citing *Howerton v.*

3   *Gabica*, 708 F.2d 380, 383, (9th Cir. 1983).  Another is to show that the private party "is a

4   willful participant in joint activity with the State or its agents."  *Howerton*, 708 F.2d at 383,

5   quoting *Adickes*, 398 U.S. at 152.  "Private persons, jointly engaged with state officials in the

6   prohibited action, are acting 'under color' of law for purposes of the statute."  *Price*, 383 U.S. at

7   794.  In this case, Defendant Tyler acted willfully, jointly and substantially with Defendant Seese

8   and other state officers to suborn and carry out Plaintiff's false arrest the false arrest of plaintiff.

9   Put succinctly: "Private parties act under color of state law if they willfully participate in joint

10   action with state officials to deprive others of constitutional rights. Private parties involved in

11   such a conspiracy may be liable under section 1983."  *United Steelworkers of America v. Phelps*

12   *Dodge Corp*. (9th Cir.1989) 865 F.2d 1539, 1540 (internal citations omitted).

13   63.     Defendant Seese is further liable to Plaintiff under the standard of supervisory

14   liability as it applies to Section 1983, for directly and personally participating in Plaintiff's

15   constitutional deprivations; for setting in motion, and/or knowingly refusing to terminate, the

16   series of actions of others, including those of Defendant Tyler, which led to Plaintiff's false

17   arrest and detention; for acquiescing in the constitutionally infirm actions of these subordinates;

18   and/or for showing a reckless and/or callous indifference to Plaintiff's rights.

19   64.     As direct, foreseeable, and proximate result of these Defendants' actions and

20   omissions in causing Plaintiff's false arrest and detention, Plaintiff suffered deprivations of

21   fundamental rights, including loss of liberty, together with emotional and economic harm,

22   entitling him to compensatory, punitive, presumed, and nominal monetary damages.

23   65.     Based on the foregoing, these Defendants are jointly and severally liable to

24   Plaintiff for his losses and damages.

**TWO:  42 U.S.C. § 1983 (First Amendment)**
**Retaliation For, And Interference With, Free Speech**
**Against: Defendants Tyler and Seese, as individuals**

26   66.     Plaintiff hereby re-alleges and incorporates the foregoing paragraphs as if fully set

27   forth again here.

28   67.     During his arrest and detention, Plaintiff had a clearly established right to be free

14

PIER 5 LAW OFFICES
San Francisco, CA

1  from official retaliation for, and interference with, his rights to free speech, petition, and redress

2  of grievances as secured to him by the First Amendment to the United States Constitution.

3    68.    In criticizing police, and particularly Modesto police officers—including but not

4  limited to displaying certain clothing and body art; protesting and documenting/recording abuses

5  by Modesto Police officers, including on June 9, 2016; posting criticisms of Defendant Tyler on

6  Facebook; and verbally criticizing and complaining to Defendant Tyler on November 4, 2016—

7  Plaintiff was engaged in protected constitutional activity.

8    69.    Plaintiff's afore-described protected constitutional activity was a substantial

9  motivating factor in prompting these Defendants to suborn and cause Plaintiff's false arrest and

10  imprisonment on November 6, 2016, as described above.

11    70.    These Defendants' actions in suborning Plaintiff's false arrest would chill a

12  person of ordinary firmness from continuing to engage in Plaintiff's afore-described protected,

13  First Amendment activity, and did in fact subdue, and for a time silence, Plaintiff.

14    71.    In committing the afore-described acts and omissions, these Defendants acted in

15  the course and scope of their employment as sworn Modesto Police officers and under color of

16  California state law.  Alternatively, Defendant Tyler's conduct meets the requirements for "state

17  action" and "joint action" under Section 1983 jurisprudence, as discussed and explained above.

18    72.    Defendant Seese is further liable to Plaintiff under the standard of supervisory

19  liability as it applies to Section 1983, for directly and personally participating in Plaintiff's

20  constitutional deprivations; for setting in motion, and/or knowingly refusing to terminate, a series

21  of actions of others, including those of Defendant Tyler and Modesto Police arresting officer

22  J. Wesley, which led to the retaliation for, and interference with, Plaintiff's First Amendment

23  rights; for acquiescing in the constitutionally infirm actions of these subordinates; and/or for

24  showing a reckless and/or callous indifference to Plaintiff's rights.

25    73.    As direct, foreseeable, and proximate result of these Defendants' conduct in

26  retaliating against Plaintiff for, and interfering with, Plaintiff's free exercise of his First

27  Amendment rights, Plaintiff suffered emotional and pecuniary harm, entitling him to

28  compensatory, punitive, presumed, and nominal monetary damages.

74. Based on the foregoing, these Defendants are jointly and severally liable to Plaintiff for his losses and damages.

**THREE: 42 U.S.C. § 1983 (Failure to Intervene)**
**Against: Defendants Tyler and Seese, as individuals**

75. Plaintiff hereby re-alleges and incorporates the foregoing paragraphs as if fully set forth again here.

76. Having provided false and misleading information to officers with the intention of suborning Plaintiff's false arrest an detention, thereby knowing the same to be unconstitutional and unlawful, and with the substantially motivating intention of interfering with Plaintiff's protected First Amendment rights, Defendants, and each of them, neglected and refused to intervene to prevent one another, and other officers, from causing Plaintiff's constitutional rights violations, despite having the ability, through reasonable diligence, to prevent the same—thereby actually and proximately violating Plaintiff's constitutional rights, per 42 U.S.C. § 1986.

77. As direct, foreseeable, and proximate result of these Defendants' failure to intervene, Plaintiff suffered deprivations of fundamental rights, including loss of liberty, together with emotional and pecuniary harm, entitling him to compensatory, punitive, presumed, and nominal monetary damages.

78. Based on the foregoing, these Defendants are jointly and severally liable to Plaintiff for his losses and damages.

**FOUR: 42 U.S.C. § 1983 (14th Amendment)**
**Deprivations of Procedural and Substantive Due Process**
**(Deliberate Fabrication of Evidence and Interference with Access to Justice)**
**Against: Defendants Tyler and Seese, as individuals**

79. Plaintiff hereby re-alleges and incorporates the foregoing paragraphs as if fully set forth again here.

80. The 14th Amendment to the U.S. Constitution protects Plaintiff Cherry from being subjected to criminal charges against him on the basis of false evidence deliberately fabricated by defendants, and protects Mr. Cherry's access unfettered and untainted access to justice in the courts.

PIER 5 LAW OFFICES
San Francisco, CA

PIER 5 LAW OFFICES
San Francisco, CA

81.     In this case, Defendants Tyler and Seese deliberately fabricated evidence used to criminally charge Plaintiff, namely their false allegations to Oakdale Police officer(s) (along with Tyler's false testimony at Plaintiff's preliminary hearing) that Plaintiff threatened Sgt. Tyler in a Facebook post and at the football game on November 4, 2016; that Plaintiff attempted to dissuade Tyler as a witness in Plaintiff's marijuana case; and that Plaintiff put Tyler in reasonable and actual fear for Tyler's safety in his Facebook post or during their encounter at the football game.

82.     As direct, foreseeable, and proximate result of these Defendants' deliberate fabrication of evidence against him, Plaintiff suffered deprivations of fundamental rights, including loss of liberty, together with emotional and pecuniary harm (icluding attorney's fees and costs of defense), entitling him to compensatory, punitive, presumed, and nominal monetary damages.

83.     Based on the foregoing, these Defendants are jointly and severally liable to Plaintiff for his losses and damages.

**FIVE:  CONSPIRACY**
**42 U.S.C. § 1983**
**Against: Defendants Tyler and Seese, as individuals**

84.     Plaintiff hereby re-alleges and incorporates the foregoing paragraphs as if fully set forth again here.

85.     Defendants Tyler and Seese acted in concert to violate Plaintiff's federal civil rights, namely to be free from unlawful and unreasonable seizure under the Fourth Amendment to the U.S. Constitution, and to be free from retaliation for and interference with the his rights to freely observe and criticize police under the First and Fourteenth Amendments to the U.S. Constitution.

86.     42 U.S.C. § 1983 Conspiracy: These Defendants had both a tacit and an explicit agreement to achieve these unlawful ends through a combination of both lawful and unlawful means, and each Defendant played his part in doing so.  Defendants' overt acts in furtherance of this conspiracy against Plaintiff included, but are not limited to (a) posting and/or acquiescing in the posting of police bulletins in the Modesto Police station designed to frame Mr. Cherry; (b)

17

1 their November 4, 2016 telephone text exchange in which Lt. Seese wrote, "Arrest him,"

2 referring to Plaintiff, and Sgt. Tyler responded, "That's the plan;" (c) Lt. Seese's contact with the

3 Oakdale Police Department requesting Plaintiff's arrest and arranging for their interview of Sgt.

4 Tyler; (d) Sgt. Tyler's false reporting of his encounters with, and feelings about, Mr. cherry,

5 including during their encounter at the football game on November 4, 2016, both to Oakdale

6 Police and at Plaintiff's preliminary hearing on October 23, 2017.

7   87. [Omitted.]

8   88. At all times relevant hereto, Defendants were acting in the course and scope of

9 their employment as sworn Modesto Police officers and under color of California state law.

10 Alternatively, Defendant Tyler's conduct meets the requirements for "state action" and "joint

11 action" under Section 1983 jurisprudence, as discussed and explained above.

12   89. As direct, foreseeable, and proximate result of these Defendants' conspiracy

13 against Plaintiff, Plaintiff suffered emotional and pecuniary harm, entitling him to compensatory,

14 punitive, presumed, and nominal monetary damages.

15   90. Based on the foregoing, these Defendants are jointly and severally liable to

16 Plaintiff for his losses and damages.

17     **CAUSES OF ACTION UNDER CALIFORNIA STATE LAW**

18

19     **SIX: False Arrest and Imprisonment**
      **California Common Law and Penal Code § 836**

20    **Against: Defendants Tyler and Seese in the official capacities;**
    **and against Defendant Tyler in his private, individual capacity;**

21     **and against the City of Modesto, in *respondeat superior***

22   91. Plaintiff hereby re-alleges and incorporates the foregoing paragraphs as if fully set

23 forth again here.

24   92. On November 5, 2016, Plaintiff was falsely arrested and imprisoned, without

25 warrant, probable cause, reasonable suspicion, his consent, exigency, or other justification.

26   93. Defendants Tyler and Seese, and each of them, substantially caused Plaintiff's

27 false arrest and imprisonment by their actions and omissions described above, including but not

28 limited to conspiring together, suborning Plaintiff's false arrest by Oakdale Police, and providing

PIER 5 LAW OFFICES
San Francisco, CA

false and misleading information about Plaintiff to, and concealing exculpatory information from, Oakdale Police, regarding Defendant Tyler's interaction with Plaintiff at the football game on November 4, 2016.

94.     In committing the afore-described acts and omissions, Defendants Tyler and Seese acted in the course and scope of their employment as sworn Modesto Police officers. Alternatively, Defendants Tyler remains liable for Plaintiff's false arrest/imprisonment in Defendant's private and personal capacity.

95.     Defendant Seese is further liable to Plaintiff under the standard of supervisory liability under California law, for "authoriz[ing], encourag[ing], direct[ing], or assist[ing]" Defendant Tyler and Modesto Police Officer J. Wesley in falsely arresting Plaintiff, and for "procur[ing] [Plaintiff's] unlawful arrest, without process, or participat[ing] in the unlawful arrest …." *Du Lac v.  Perma Trans Products, Inc*. 103 Cal.App.3d 937, 941 (1980) (quotations and citation omitted); see also, *Michel v. Smith*, 188 Cal. 199, 201-202 (1922) ("A supervisor is liable for the actions of his/her officers when s/he "has directed such acts to be done, or has personally co-operated in the offense.")

96.     Defendant Tyler is also liable in his private, individual capacity for suborning Plaintiff's false arrest, as described above.  Where a defendant "knowingly [gives] the police false or materially incomplete information, of a character that could be expected to stimulate an arrest" "such conduct can be a basis for imposing liability for false imprisonment."  *Id*. at 942.

97.     As direct, foreseeable, and proximate result of Defendants' actions and omissions in substantially causing Plaintiff's false arrest and detention, Plaintiff suffered deprivations of fundamental rights, including loss of liberty, together with emotional and economic harm, entitling him to compensatory, exemplary (punitive), and nominal monetary damages.

98.     Based on the foregoing, Defendants, and each of them, are jointly and severally liable to Plaintiff for his losses and damages.

99.     Defendant City of Modesto is liable to Plaintiff in *respondeat superior* for the unlawful acts and omissions of its employee officers, Defendants Tyler and Seese, under California Government Code § 815.2.

PIER 5 LAW OFFICES
San Francisco, CA

AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS          *Cherry v. Tyler, et al.*

PIER 5 LAW OFFICES
San Francisco, CA

### SEVEN:  Malicious Prosecution
### California Common Law
### Against: Defendants Tyler and Seese in their personal, individual capacities

100.    Plaintiff hereby re-alleges and incorporates the foregoing paragraphs as if fully set forth again here.

101.    On or about December 29, 2016, the Stanislaus County District Attorney's Office initiated prosecution of Plaintiff, as a direct, proximate, and foreseeable result of Defendants Tyler and Seese's actions and omissions described above, including but not limited to conspiring together, suborning Plaintiff's false arrest by Oakdale police, and providing false and misleading information about Plaintiff to, and concealing exculpatory information from, Oakdale Police, regarding Defendant Tyler's interaction with Plaintiff at the football game on November 4, 2016.

102.    Defendants Tyler and Seese initiated and fomented this prosecution of Plaintiff with malice and/or malicious intent, in retaliation against Plaintiff for exercising his rights of free expression to criticize police, including Sgt. Tyler specifically, and to hold police accountable for misconduct.

103.    On or about April 23, 2018, the Stanislaus County District Attorney's Office dismissed the last remaining charge, and the entire case, against Plaintiff, such that these legal proceedings against Plaintiff terminated wholly in Plaintiff's favor.

104.    Defendants Tyler and Seese's conduct was a substantial factor in causing the Stanislaus District Attorney's Office to prosecute Plaintiff.

105.    As direct, foreseeable, and proximate result of these Defendants' actions and omissions in initiating and fomenting Plaintiff's malicious prosecution, Plaintiff suffered economic and emotional harm, including the loss of tens of thousands of dollars in legal fees and costs, entitling Plaintiff to compensatory, exemplary (punitive), and nominal monetary damages.

106.    These Defendants' conduct, as described above, was a substantial factor in causing Plaintiff's harm.

107.    Based on the foregoing, these Defendants are jointly and severally liable to Plaintiff for his losses and damages.

AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS                    *Cherry v. Tyler, et al.*

PIER 5 LAW OFFICES
San Francisco, CA

**EIGHT:  Abuse of Process**
**California Common Law**
**Against: Defendants Tyler and Seese in their personal, individual capacities**

108.    Plaintiff hereby re-alleges and incorporates the foregoing paragraphs as if fully set forth again here.

109.    On or about November 4 and 5, 2016, Defendants Tyler and Seese began to misuse their authority, power, and credibility as police officers, and the instruments of the Oakdale Police and the Stanislaus District Attorney's Office, to suborn Plaintiff's false arrest, imprisonment, and prosecution, on information and charges which these Defendants knew to be false and misleading.

110.    Defendants Tyler and Seese intentionally misused these legal procedures to retaliate against Plaintiff, and to punish him extra-judicially, for exercising his rights of free expression to criticize police, including Defendant Tyler personally, and to hold police accountable for their misconduct

111.    As direct, foreseeable, and proximate result of these Defendants' actions and omissions in suborning Plaintiff's false arrest, imprisonment, and prosecution, Plaintiff suffered economic and emotional harm, including the loss of tens of thousands of dollars in legal fees and costs, entitling Plaintiff to compensatory, exemplary (punitive), and nominal monetary damages.

112.    These Defendants' conduct, as described above, was a substantial factor in causing Plaintiff's harm.

113.    Based on the foregoing, these Defendants are jointly and severally liable to Plaintiff for his losses and damages.

**NINE:  Intentional Infliction of Emotional Distress**
**California Common Law**
**Against: Defendants Tyler and Seese in their personal, individual capacities**

114.    Plaintiff hereby re-alleges and incorporates the foregoing paragraphs as if fully set forth again here.

115.    In posting police bulletins in the Modesto Police station designed to frame Mr. Cherry; actually plotting to frame Cherry; and suborning Cherry's false arrest, including by lying

1    to Oakdale Police about Sgt. Tyler's interactions with Cherry and Sgt. Tyler's giving false

2    testimony at Cherry's preliminary hearing on October 23, 2017, Defendants Tyler and Seese

3    acted outrageously and/or in a manner that is shocking to the conscience of the community.

4        116.    In committing the afore-described acts and omissions, Defendants Tyler and

5    Seese acted with reckless disregard of the probability that Mr. Cherry would suffer emotional

6    distress.

7        117.    As a result of the afore-described conduct by these Defendants, Mr. Cherry

8    suffered and continues to suffer severe emotional distress.

9        118.    This conduct by these Defendants was a substantial factor in causing Mr.

10   Cherry's severe emotional distress, including anxiety, fear, stress, shock, worry, and humiliation.

11
                                    **TEN:  Negligence**
12              **California Civil Code § 1714(a) and California Common Law**
               **Against: Defendants Tyler and Seese in their official capacities,**
13       **and against Defendant Tyler in his personal, individual capacity;**
                   **and against the City of Modesto, in *respondeat superior***
14

15       119.    Plaintiff hereby re-alleges and incorporates the foregoing paragraphs as if fully set

16   forth again here.

17       120.    As sworn police officers, these Defendants owed duties of care to Plaintiff,

18   including but not limited to: maintaining their professional composure and not reacting

19   unlawfully to Plaintiffs' constitutionally protected right to observe and criticize them; refraining

20   from causing Plaintiff to be falsely arrested and detained without warrant, probable cause,

21   reasonable suspicion, consent, exigency, or other justification; reporting events truthfully and

22   accurately; and in Defendant Seese's case, responsibly supervising Defendant Tyler.

23       121.    In conspiring to and actually suborning Plaintiff's false arrest and malicious

24   prosecution; falsely reporting events to the Oakdale Police; in Defendant Tyler's case, falsely

25   testifying at Plaintiff's October 23, 2017; in Defendant Seese's case, failing to responsibly

26   supervise Defendant Tyler; preliminary hearing, these Defendants breached their duties of care

27   to Plaintiff.

PIER 5 LAW OFFICES
San Francisco, CA

PIER 5 LAW OFFICES
San Francisco, CA

122.    As direct, foreseeable, and proximate result of these Defendants' breach of their duties of care to Plaintiff, Defendants caused Plaintiff to suffered economic and emotional harm, entitling him to compensatory and nominal monetary damages.

123.    Based on the foregoing, these Defendants are jointly and severally liable to Plaintiff for his losses and damages.

124.    Defendant City of Modesto is liable to Plaintiff in *respondeat superior* for the unlawful acts and omissions of its employee officers, Defendants Tyler and Seese, under California Government Code § 815.2.

### DEFENDANTS ARE NOT IMMUNE FROM SUIT OR LIABILITY

125.    Regarding all actions and causes of action herein alleged and stated, all individual defendants, including all DOE defendants, violated rights held by Plaintiff which were clearly established at the time, such that no reasonable officer similarly situated to any of the Defendants reasonably could have believed that his/her conduct was lawful or within the bounds of reasonable discretion.  All individual defendants, including all DOE defendants, thus lack federal qualified or California statutory or common law immunity from suit or liability.

### JURY TRIAL DEMANDED

126.    Plaintiff requests and demands trial by jury as to each and every fact and each and every claim and cause of action herein.

### PRAYER FOR RELIEF

127.    Wherefore, Plaintiff Cherry prays for relief and judgment against defendants, jointly and severally, as follows:

a. General and compensatory damages for emotional suffering, including stress, anxiety, fear, humiliation, and damage to reputation;

b. General and compensatory damages for pecuniary losses, including plaintiff's attorney's fees and other costs of defending himself against the false and malicious prosecution spurred by defendants;

c. General and compensatory for lost income and lost earning potential;

d. Presumed, nominal, and incidental damages;

e. Attorney's fees to the extent allowable, including without limitation under 42 U.S.C. § 1988, Cal. Civil Code § 1021.5, and Cal. Code of Civil Procedure

§ 2033.420(a) (based on defendants' failure, if any, to admit facts in response to plaintiffs' Requests for Admission which plaintiff thereby must prove up);

f.  Costs of litigation, including without limitation under F.R.Civ.P. 54(d) and Cal. Code of Civil Procedure §§ 1032 et seq.

g.  Pre- and post-judgment interest awardable at the highest rate(s) allowable, including under Cal. Civil Code §§ 3287 and/or 3291; and

h.  Such further relief as the Court deems just and proper.

Respectfully Submitted,

March 30, 2019            By:    /s/ - *Randolph E. Daar*
                                 Randolph E. Daar, Attorney

PIER 5 LAW OFFICES
San Francisco, CA

AMENDED COMPLAINT FOR VIOLATIONS OF CIVIL RIGHTS                    *Cherry v. Tyler, et al.*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PIER 5 LAW OFFICES**
San Francisco, CA

# EXHIBIT A

*Cherry v. Tyler, et al.*



# CRIMINAL INFORMATION BULLETIN
**MODESTO POLICE DEPARTMENT**
600 10th STREET, MODESTO, CA 95354
**CRIME ANALYSIS**
(209) 572-9547



**MODESTO**
CALIFORNIA

**OS 15-01**

**January 09, 2015**

# OFFICER SAFETY
## Attn: NE Command



**Adorthus "AD" CHERRY (36)**



**Kristie CHERRY (36)**

**Subject:** **Adorthus "AD" CHERRY BMA 8/15/1977 6'01" 220# BLK/BLK**
**Kristie CHERRY IFA 12/02/1977 5'00" 110# BRO/BRO**

**Location:** **2416 Country Ranch Dr, Modesto**

**Details:** **USE CAUTION!** Mr. Cherry is a former professional body builder with arrests for cultivation of marijuana and poss / sales of steroids. Mr. Cherry has possessed firearms in his home and vehicle in the past. He and his wife Kristie are mostly uncooperative with law enforcement and Cherry often videos officers with his telephone and /or from cameras outside his home. During his contacts with officers he attempts to bait officers with his demeanor into unwarranted uses of force or inappropriate arrests. He often posts videos or photographs of interactions with officers on the internet. Mr. Cherry is the subject of several restraining orders and appears to enjoy controversy and conflict with others including his family. His statements generally have not met the elements of terrorists threats, though his demeanor can be threatening. The Cherry's have several civil cases in litigation as well.

**Action:** **FOR INFORMATION ONLY.** Please develop your own PC for any subject or vehicle stops.

**Contact:** If contacted, notify Detective Craig Grogan at 209-652-1815.

- CONFIDENTIAL -
FOR THE EXCLUSIVE USE OF THE MODESTO POLICE DEPARTMENT AND AUTHORIZED AGENCIES



# CRIMINAL INFORMATION BULLETIN
**MODESTO POLICE DEPARTMENT**
600 10th STREET, MODESTO, CA 95354
**CRIME ANALYSIS**
(209) 572-9515



**MODESTO**
CALIFORNIA

**OS 16-10 & Orig: OS 15-01**     **AOA OP16003898**     **11/6, 6/6/16 & 1/9/15**

## OFFICER SAFETY- UPDATE


Photo Date: 11-6-2016


Actual Vehicle


Actual Vehicle

**Subject:** **Adorthus "AD" CHERRY DOB: 5/23/1972** or 8/15/1977 BMA 511/220/BLK/BLK
**ACTIVE INFORMAL PROBATION: Searchable for HS and paraphernalia.**

**Location:** 2416 Country Ranch Dr **(BEAT 72) 4 pitbulls** may be at this residence.

**Vehicle(s):** **7AHC822** 1991 Red Ford **R/O:** Cherry Adorthus J Or Cherry Kristie, 2416 Country Ranch
**6KGY747** 2009 Blue Honda **R/O:** Cherry Kristie, Or Cherry Adorthus 2416 Country Ranch

**Details:** **UPDATE**: On 11/4/2016 CHERRY threatened an off duty officer and was booked for
69PC. CHERRY made bail on 11/6/2016. **OP16003898**

Previously on 6-9-2016 a subject, later identified as CHERRY, was pushing buttons
and acting mentally disturbed, at the 11th St side of the Police Department **(BEAT 41).**
CHERRY was taking pictures of the PD, employee vehicles. Officers contacted
CHERRY and he became uncooperative. A probation search was conducted
CHERRY's vehicle and live ammunition was found inside. Officers then conducted a
probation search of CHERRY's residence and located 50+ marijuana plants along with
several swords and empty handgun rifle cases. CHERRY and CHERRY's wife, Kristie
CHERRY DOB: 12-2-1977, were booked for 11377(A) HS / 273A / MMC.
**MP16056937**

CHERRY is a former professional body builder with arrests for marijuana cultivation
and poss/sales of steroids. CHERRY has been very uncooperative with L/E and
attempts to bait officers into an altercation. CHERRY has possessed firearms in his
home and vehicle, has had a knife in a backpack and has worn a bullet proof vest
while confronting officers. CHERRY's wife stated that she has access of several
firearms at a storage facility. CHERRY often records officers with his cell phone and/or
from cameras outside his residence. CHERRY is the subject of several restraining
orders and appears to enjoy controversy and conflict with others including his family.
His statements generally have not met the elements of terrorist threats; however his
demeanor can be threatening.

**Priors:** 626.8(A)(1) / 242 / 314 / **12025(A)(1)** / 273.5(A) / **243(B)** / 422 / 71 / **148(A)** / 236 / **69** /
537(A)(1) / 23152(B) / 11360(A) / 11378 / 29800(A)(1) / 11358 / 11359 / **626.9(B)** /
4140 / **25800(A)** / 11370.1(A) / **25850(A)** / 25400(A)(1) / 11364.1(A) / 11377(B)(1) & **A.**

**Action:** **Please be aware of CHERRY and exercise caution of contact occurs. Please
develop your own PC for any subject or vehicle stop.**

- CONFIDENTIAL -
FOR THE EXCLUSIVE USE OF THE MODESTO POLICE DEPARTMENT AND AUTHORIZED AGENCIES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PIER 5 LAW OFFICES**
San Francisco, CA

# EXHIBIT B

*Cherry v. Tyler, et al.*

 **Matthew Quillen and 7 others**

**Adorthus Cherry**
CC employes a racist BLACK POLICE OFFICER as a coach!
Horrible!!!! See you in 10 wks!



Just now · Like · Reply · Message



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PIER 5 LAW OFFICES**
San Francisco, CA

**EXHIBIT C**

*Cherry v. Tyler, et al.*

**Terry Seese**
2093807669

Saturday, August 22, 2015

T It's Seese  4:46 PM

Friday, November 4, 2016

Nothing like Cherries dad threatening me at a football game.
8:43 PM

T Arrest him  9:28 PM

Thats the plan.
9:39 PM

T I was joking.  9:47 PM

He knows what i do. And he is complaining about his last arrest. He thinks I set him up. I wont do it myself.
9:52 PM

T He's an idiot  9:53 PM

T Welcome to the corral.  9:56 PM

Played their before. Crossed the goal alot there. Good luck in playoffs. Yes he is an idiot. I told you Semone is legit. I miss that kid.
10:08 PM

T If we had been at your home

Enter message                    SEND

**Terry Seese**
2093807669

you would have killed us.

10:49 PM

Coach always changes what we do when we play there. Some of it is getting ready for the play offs. I wish we would just do what we do and run. But we have to have a passing game to get through playoffs. Big picture. I guess its worked the last 4 years.

10:53 PM

Saturday, November 5, 2016

Looks like OPD will be issuing an I&B for Cherry's arrest. That a good thing. What did he say to you at the game?

4:04 PM

He thinks I set him up on his arrest in front of the pd, he called me a punk and that he was going to get me when he see' s me. He said all in front of some of Oakdale Coaches as they came out of half time. I talked to one if the assumed Coaches about it, who saw it to get him tossed. I left with ti

VIEW ALL >

4:21 PM

 Enter message

**Terry Seese**
2093807669

Sat, Nov 5, 2016 4:21 PM

He thinks I set him up on his arrest in front of the
pd, he called me a punk and that he was going to
get me when he see' s me. He said all in front of
some of Oakdale Coaches as they came out of
half time. I talked to one if the assumed Coaches
about it, who saw it to get him tossed. I left with
time on the clock to avoid him.

**Terry Seese**
2093807669

was going to get me when
he see's me. He said all in
front of some of Oakdale
Coaches as they came out
of half time. I talked to one if
the assumed Coaches about
it, who saw it to get him
tossed. I left with ti

VIEW ALL >

4:21 PM

T  Geez. I didn't realize it was
that serious. Glad the ball
is rolling on this. Did he get
tossed?
4:24 PM

He wanted to fight right
then. Not the time or the
place. All I could do is walk
away. I can not say I was
not upset when he actually
4:24 PM  threatened me.

T  You did the right thing! 4:24 PM

I am not sure if he got
tossed.
4:24 PM

Assumed coaches means I
am not sure he was a coach
but followed the team out.
I called him coach and he
turned and we talked about
it. Gave him a short run

 Enter message    SEND